IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-cv-00031-CB-KT |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | Magistrate Judge Kezia O. L. Taylor |
| JAISON MIKELONIS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

This case will be dismissed, with prejudice, as a sanction for Plaintiff's fabrication of a court order.[1]

Plaintiff transmitted to the DOC a purported NEF[2] summary, memorializing a nonexistent order directing that payments of his filing fee were "temporarily terminate[d] or cancel[led]." Doc. 61-1. When the Magistrate Judge learned what happened, she ordered Plaintiff to show cause why sanctions should not be imposed. Doc. 61. Plaintiff's Response fails the purpose.

Plaintiff acknowledges submitting the fake document, but claims he was unaware that it was fake. Doc. 71. He claims to have received the document "through and in the form of legal

---

[1] Although the fabricated document purports to address a Report & Recommendation ("R&R"), its contents, if issued by the Court, would appear in an order. As often is the case, the forger lacked sufficient acumen to make a convincing imitation.

[2] Notice of Electronic Filing, as utilized in the Court's CM/ECF system.

mail"—but offers no explanations regarding the identity of the fabricator or why someone would do such a thing. *See id.*

In reply, the City Defendants have supplied Plaintiff's Inmate Correspondence History, revealing that he did not receive "legal mail" during the operative time frame. Doc. 72 *and* 72-1. The Court is unsurprised, because Plaintiff's narrative is fairly ridiculous.

The only person having an interest in whether filing fees are deducted from Plaintiff's inmate account is Plaintiff. The only persons with ready access to the information mimicked in the false document – the NEF format, case information and NEF-recipients list, which includes support staff not identified in the docket – are Plaintiff, the lawyers, their support staff and the Court. Details regarding the "control number" procedures, applicable to "legal mail" in the prison system, similarly are outside common knowledge. Disinterested individuals would not know the number to put on a control sticker, if they knew such a thing existed.

Plaintiff offers no credible explanations, because none exist. Motive and opportunity were uniquely his. Plaintiff knows what NEFs look like, multiple text-only Court documents have been served on him in the same format. As luck would have it, a legitimate R&R was entered on October 2, 2025. Doc. 59. The majority of its NEF-contents are materially similar or identical to the false document. All that would be required to falsify a document, using the prior NEF as a template, is access to PACER, a word-processing application and rudimentary knowledge of its capabilities.[3] That and "mischievous" intent (a characterization that is charitable, to a fault).

---

[3] In saying Plaintiff fabricated the document, the Court means he or someone associated with him. It is not hard to imagine that he had "help," only that the document mysteriously appeared in his "legal mail" in ways unbeknownst to him.

Unfortunately, barriers of entry to the falsification of court orders are low, and our growing reliance on digital technology has only increased the opportunities. In light of these realities, the legal system relies on litigants knowing better than to "go there," given the severity of the consequences.

To protect the integrity of the legal system, then, the Court's reaction must be swift and harsh. Although dismissal is a severe sanction, reserved for the worst of offenses, fabricating court orders qualifies. Stafford v. Derose, 2015 WL 1499833, *2-5 (M.D. Pa. Apr. 1, 2015) (a court must "consider not only the prejudice to the litigants, but also the impact of the fraudulent conduct on the judicial system and the threat it poses to the integrity of the court") (all quotations cleaned up, and citations omitted, here and hereafter); Martin v. Redden, 34 F.4th 564, 568-69 (7th Cir. 2022) (the "severe sanction[]" of dismissal was warranted, because "[p]erjury is among the worst kinds of misconduct," and "[n]o one [should] need[] to be warned not to lie to the court"); *see also, e.g.,* Amfosakyi v. Frito Lay, Inc., 496 Fed.Appx. 218, 225 (3d Cir. Sept. 12, 2012) ("[s]imply put, a litigant who provides false documentation" in "an improper attempt to influence the outcome" of civil litigation "may be prohibited . . . from proceeding") (unpublished decision, persuasive authority only).

Passage after passage in the above-cited cases emphasize the corrosive effects of similar misconduct on our justice system. Considering that the fabricated document was attributed to the Court, the need for strong rebuke is even more acute. Stafford at *5 ("any sanction short of dismissal may be inherently inadequate to remedy the harm to the public interest in preserving the integrity of the courts, and in deterring future misconduct"). Plaintiff is fortunate that his consequences will be limited to this case. *See* Martin, 34 F.4th at 568-69 (affirming a two-year filing ban, for less egregious conduct).

The factors addressed in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863 (3d Cir. 1984) are in line.  Plaintiff's personal responsibility (factor 1) could not be greater.  Nor the prejudice, to the judicial system and the integrity of the courts (factor 2).  Plaintiff's conduct was willful (factor 4), and his denials, and pleas for mercy, ring hollow.[4]  History of delay (factor 3) and the meritoriousness of his claims (factor 6) are neutral and, in the undersigned's view, beside the point.  As to alternative punishment (factor 5), monetary sanctions would be ineffective, given Plaintiff's litigation status (an incarcerated person, proceeding IFP).  Stafford at *5  As explained above, moreover, a clear message must be sent:  impersonating the Court is never "on the table."  It will end badly, and the only question is, how badly.  Plaintiff should be grateful that additional consequences will not be initiated by the Court.  *Cf.* Doc. 64 (summarizing numerous state and federal criminal laws with which Plaintiff might be charged, but deferring to the Court on whether to report the conduct to law enforcement – a step the undersigned has determined is unnecessary).

Consistent with the foregoing, the Court hereby enters the following:

---

[4]  While Plaintiff's regret for his consequences appears genuine, the more he tries to evade them the deeper the hole he digs.  His response claims that a DOC hearing examiner endorsed his narrative.  Doc. 71 at ¶¶ 5-6.  Not so.  The examiner's report acknowledges Plaintiff's narrative, and attributes it to Plaintiff—which explains the use of quotation marks.  Doc. 71-1 (inmate "states: 'I plead guilty to contraband since I did have forged documents.  I did not know they were forged though.'").  Although Plaintiff may mistake his positions for advocacy, they are, in fact, somewhat insulting of the Court's intelligence.  The undersigned does not mean so personally, and lawyers at times have been known to do the same.  To close the circle: the hearing examiner's acceptance of Plaintiff's *voluntary admission of guilt* on a disciplinary charge, *which resulted in a sentence of 60 days in disciplinary custody*, cannot be read to show that the examiner found Plaintiff's version credible, or that he was "innocent" of other charges.

## II. ORDER

Plaintiff's case is **DISMISSED WITH PREJUDICE**.[5]

March 2, 2026                                       s/Cathy Bissoon
                                                    Cathy Bissoon
                                                    Chief United States District Judge


cc (via First-Class U.S. Mail):

William Scott
65790510
NEOCC
2240 Hubbard Road
Youngstown, OH  44505


cc (via ECF email notification):

All Counsel of Record

---

[5] Dismissal is made pursuant to the Court's inherent authority to sanction.  As to Rule 11, court-forgeries, on their face, are hard to categorize.  They rarely (if ever) are presented *to the court* as a "pleading, written motion or other paper."  Fed. R. Civ. P. 11(a).  Plaintiff's denials, which the undersigned has rejected under a preponderance of the evidence standard, were made in his response to the SCO, which *is* governed by Rule 11.  Emphasizing a second deception, made to cover a first one, adds complication without benefit.  Given the law's preference for Rules-based sanctions, however, the Court notes that its result would be the same either way.

5